IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARGARET P. TOURTELLOTTE, KARLA KRIEGER, ASHLEY C. HISER, and ANA V. REYES<br><br>Plaintiffs,<br><br>v.<br><br>ELI LILLY AND COMPANY and TIMOTHY ROWLAND,<br><br>Defendants. | :<br>:<br>:<br>:<br>: No. 09-CV-0774<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANT ELI LILLY AND COMPANY'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF PLAINTIFF KARLA KRIEGER**

I.     **INTRODUCTION**

       As narrowed by Krieger's Response (or lack thereof) to Lilly's Motion for Summary Judgment, Krieger's claims against Lily boil down to the following issues:  (1) whether she has evidence that her probation and later discharge for poor work performance were discriminatory and/or retaliatory; (2) whether a small number of comments allegedly made to her by manager Tim Rowland are sufficiently severe or pervasive to create a hostile work environment; and (3) whether Lilly's broad anti-discrimination policies constituted a contract under New Jersey law.  Krieger provided no response to Lilly's arguments as to her disability claims and claims based on other alleged adverse actions and thus has abandoned them.  As to the few claims that remain, each fails as a matter of law.

       First, Krieger herself admits committing much of the conduct that led to her discipline and discharge, identifies no similarly situated employee treated differently, and offers nothing other than generalities about the alleged treatment of other women in a failed effort to

establish pretext. Indeed, the record is uncontradicted that Rowland (the only alleged discriminator) had no involvement in Kreiger's discharge, thus rendering much of Kreiger's argument and evidence utterly irrelevant. Second, as to Krieger's harassment claim, the conduct Kreiger attributes to Rowland was isolated and much of it failed to establish any *anti*-African American or *anti*-female animus; accordingly, Krieger cannot establish an objectively hostile work environment. Finally, Krieger's Response fails to recognize the well-established law that prohibits her from recovering on a breach of contract claim under the theory asserted.

For these reasons, and the reasons discussed below and in Lilly's Opening Brief, Lilly is entitled to summary judgment on all of Krieger's claims.

## II. ARGUMENT

### A. Krieger's Abandoned Disability Discrimination Claims Fail

In her Response, Krieger makes no arguments in support of her disability discrimination or failure to accommodate claims. Indeed, she makes only two passing references to an alleged disability and requested accommodation, neither of which appears to relate to her. (Response at 28 (mentioning "disability" for the first and only time) & *id.* at 32 (alleging that Lilly denied *Reyes'* request for accommodations).) Because she entirely ignored Lilly's arguments with respect to the required elements of her disability discrimination and failure to accommodate claims (resulting in waiver), Lilly is entitled to summary judgment on these claims.

### B. Krieger's Discrimination And Retaliation Claims Are Without Merit

#### 1. The Only Adverse Employment Actions At Issue Are Krieger's Probation and Termination

Krieger effectively concedes that the various actions she purported to identify in her deposition do not actually rise to the level of material adversity by her Response's utter

2

failure to address Lilly's discussion of the issues in its Opening Brief. Instead she focuses on her placement on probation and termination of employment. Thus, Krieger has abandoned all claims except those based on her probation and termination.

### 2. Krieger Has No Admissible Evidence That Gives Rise To An Inference Of Discrimination Or Retaliation

Krieger premises her prima facie discrimination case on her allegation that Rowland treated her male partner, Pete Puelo, more favorably. She alleges that Rowland's interactions during field visits with Puelo included "going out for beers" and "talking a bit and seeing a couple of doctors," while hers consisted of Rowland walking six feet behind her and critiquing her performance. (Response at 26.) She also alleges that Rowland threatened her with termination but awarded Puelo a bonus. (*Id.*) But Krieger never attended any field visits with her male co-workers (including Puelo) (Dep. 254:10-14), never viewed their personnel files for disciplinary or other records (Dep. 460:1-5, 461:22-462:5), and never knew for a fact what, if any, bonuses they received (Dep. 551:13-552:5). In short, as Kreiger implictly admits in her brief, Krieger's information about what happened to Peulo is based solely on what Puelo supposedly told her. (Response at 26, n.4 (claiming that statements by unidentified co-workers are statements by Lilly's agents and thus admissible under hearsay rules[1])). Krieger cannot survive summary judgment by relying on inadmissable hearsay.

Moreover, Krieger cannot succeed on her discrimination claims by simply aggregating every perceived slight or unpleasant interaction into an alleged "general attitude"

---

[1] Krieger makes no effort to show that her male co-worker was an "agent" and authorized to speak on behalf of Lilly; accordingly, the statements are not admissible under 801(d). Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 810 n.7 (E.D. Pa. 2005) (disregarding employees' statements as inadmissible hearsay because record evidence was insufficient to establish that statements were made within the scope of their employment and, therefore, statements of an agent).

and claim that attitude explains every adverse action allegedly suffered. Rather, Krieger must present some evidence to support an inference of discrimination, such as preferential treatment of similarly situated co-workers <u>with respect to the materially adverse employment action at issue</u>. The only adverse actions pursued by Krieger on summary judgment are her probation and discharge. Rowland placed Krieger on probation because, shortly after receiving a written warning for poor performance and progressing through the disciplinary system, she adjusted the clock on her computer and submitted sample cards to Lilly late, all in violation of Lilly policy. (Dep. 454:20-455:6, Exh. 100.) And her employment was terminated because she lacked proficiency in detailing and twice failed a required product test. (19:8-10, 79:4-6, 474:7-477:21; Gold Aff. ¶ 4.) Krieger has no evidence that Puelo adjusted the clock on his computer, submitted sample cards to Lilly late, lacked proficiency in detailing, or twice failed a required product test. In short, the preferential treatment Krieger alleges Puelo received is unconnected and irrelevant to the discipline and discharge she challenges. <u>See</u> <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d 344, 359 (3d Cir. 1999) (to determine whether similarly situated employees were treated more favorably, the courts' "focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action").

Finally, even if Rowland treated Puelo more favorably (which Lilly denies), evidence of "differential treatment of 'a single member of the non-protected class is insufficient to give rise to an inference of discrimination.'" <u>Pivirotto v. Innovative Sys., Inc.</u>, 191 F.3d 344, 359 (3d Cir. 1999); <u>see also</u> <u>Leyva v. Computer Sciences Corp.</u>, 169 F. App'x 720, 725-26 (3d Cir. 2006) (finding that employee's evidence that a younger co-worker was given support staff while she was not was "weak evidence" of discrimination and that the employee had failed to provide a sufficient basis for a reasonable fact-finder to determine "that an invidious

discriminatory reason was more likely than not a motivating factor or determinative cause" of her discharge).

### 3. Krieger Cannot Establish A Causal Connection Between Any Alleged Protected Activity In Which She Engaged And Her Discipline And Discharge

Additionally, Krieger's retaliation claim fails because she cannot prove any causal connection between the alleged protected activity in which she engaged and her probation or discharge. Causation is found where an employer is <u>motivated</u> to take an adverse action against an employee <u>because of</u> the employee's protected activity. <u>Estate of Oliva ex rel. McHugh v. New Jersey</u>, 604 F.3d 788, 802-02 (3d Cir. 2010); <u>Ransome v. Mooney</u>, No. 1:09-CV-604, 2010 WL 4683779, at *7 (M.D. Pa. Oct. 1, 2010). Krieger has not offered any evidence whatsoever to demonstrate that her probation and employment termination were retaliatory. Quite to the contrary, Krieger has admitted to the very misconduct and poor performance that formed the basis of her discipline and discharge. (Dep. 443:14-18 & 447:1-14 (admitting to misconduct that formed the basis of her written warning); 455:7-456:8, 460:3-8, & Exh. 100 (admitting to the misconduct that formed the basis of her probation); 474:10-19 & 476:19-24 (admitting the poor performance that formed the basis of her discharge).)

Moreover, there is nothing suspicious (or even suggestive) about the timing of Krieger's discharge. In support of her retaliation claim, Krieger's Response focuses on alleged protected activity in March 2007 and June 2007. Lilly concedes for purposes of summary judgment that Krieger's Charge of Discrimination, which she filed on October 26, 2007, could also constitute protected activity. Regardless, Krieger's employment was terminated <u>more than a year later</u> on November 4, 2008 (Dep. 79:4-6). The timing of the termination of her employment does nothing to suggest—and certainly does not establish—causation. <u>See</u> <u>Morrison v.</u>

5

Carpenter Tech. Corp., 193 F. App'x 148, 155 (3d Cir. 2006) (timing of corrective performance review, which occurred almost 4 months after the employee's complaint was not unduly suggestive). Moreover, timing alone, even if suspicious, is insufficient to establish causation. Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 2008); Helm v. Matrix Servs. Indus. Contractors, No. 07-4622, 2008 WL 4889013 (E.D. Pa. Nov. 12, 2008) (granting summary judgment for employer on retaliation claim, holding that "suspicious timing alone will ordinarily be insufficient to create a causal link" for purposes of establishing unlawful causation).[2]

### 4. Krieger Has Not Established (And Cannot Establish) That Lilly's Proffered Non-Discriminatory And Non-Retaliatory Reasons For Its Discipline and Discharge Decisions Were Pretext

Finally, even assuming that Krieger could establish a prima facie case of either discrimination or retaliation, she cannot show pretext. The Third Circuit has explained that, to establish pretext, Krieger must provide some evidence from which a fact-finder could reasonably either (1) disbelieve Lilly's articulated legitimate reasons, or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Lilly's action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 2011). It is not enough for Krieger to show that Lilly's decision to discharge her was "wrong or mistaken." Id. at 765. Rather, to avoid summary judgment, she must point to evidence to show that Lilly's articulated legitimate, non-discriminatory reason was either a *post hoc* fabrication or otherwise did not actually motivate the

---

[2] Krieger argues that "[b]ecause the Defendants denied Reyes's [sic] requests for accommodations, threatened her, and ultimately terminated her within months of her filing her complaints . . . there was a causal connection between her complaints and Defendants' adverse actions." (Response at 32). Because most of this argument does not pertain to Krieger, Lilly is addressing only the timing issue.

6

employment action." Id.  This standard places a "difficult burden" on Krieger, id., which she has not (and cannot) overcome.

Krieger's pretext argument is hard to decipher.  As an initial matter, Krieger simply restates (without any evidentiary citations) her theory that manager Rowland was the cause of her discipline and discharge.  (Response at 28 ("The reason that Krieger was disciplined and ultimately terminated was because of the harassing, discriminatory, and bigoted treatment she received from Rowland, and ultimately Lilly.").)  She then launches into a conclusory discussion of Rowland's alleged treatment of other women, which is based, variously, on allegation, hearsay, out-of-context quotations, and speculation.[3]  (Response at 29.)

Whatever one may think of Krieger's description of the alleged woes of other employees, it does not establish that Lilly's explanation for *her* discipline and discharge—namely, her admitted long-standing poor performance—was a pretext for discrimination.  Indeed, Krieger has offered no evidence whatsoever to suggest that Lilly's explanations were a "*post hoc* fabrication" or that her performance shortcomings did not actually motivate Lilly's personnel actions.  Additionally, Krieger's pretext argument almost exclusively focuses on the allegedly wrongful conduct of Rowland.  However, as previously discussed, at the time of her termination, Krieger had not reported to Rowland for more than 4 months, and Rowland had no

---

[3] For example, Krieger states that several women "suffered some sort of psychological problems because of him, or at least believed that he discriminated against female employees."  (Response at 29.)  Of course, there is no admissible medical evidence that Rowland actually *caused* any bona fide medical condition, and the purported "belief" of various employees that Rowland discriminated against women is not proof of anything.

involvement at all in Lilly's decision to terminate Krieger's employment. (Gold. Aff ¶ 4; Rowland Aff. ¶ 4.)[4]

Absent any evidence that Lilly's explanations for the two adverse actions at issue (Krieger's probation and discharge) are pretextual, Krieger's discrimination and retaliation claims cannot succeed, and Lilly is entitled to summary judgment on these claims.

### C. Krieger Cannot Prevail On A Race- or Sex-Based Harassment Claim

#### 1. The Court Should Disregard Irrelevant Comments Having Nothing To Do With Race Or Gender.

Krieger supports her hostile work environment claim with alleged comments and conduct that have nothing to do with her race or gender. For example, she complains that Rowland asked her to "speak English" then did not look at or speak to her. She also contends that Rowland gave her negative feedback about her performance. These comments and conduct have nothing to do with Krieger's race or gender, and no reasonable juror could subject them to such an interpretation. Therefore, the Court should ignore these allegations in its summary judgment analysis.

#### 2. Krieger Cannot Establish That The Conduct About Which She Complains Was Based On Her Race or Sex

The Court should also ignore in its summary judgment analysis comments and conduct that do not in any way cast African Americans or females in a negative light. Not all comments that somehow implicate an individuals' race or gender are "race-based" or "gender-based" within the meaning of Title VII. Rather, comments that arguably implicate race or gender

---

[4] Krieger makes a passing attempt to impugn the motives of her new manager by suggesting that Gold may have been influenced by Rowland. (Response at 16, 17, 23.) But Krieger offers no evidence of such influence because there is none.

should be reviewed in the complete context available in the record and analyzed to determine if a defendant exhibits race-based or gender-based animus.  See Brown-Baumbach v. B&B Automotive, Inc., No. CIV. A. 09-3962, 2010 WL 2710543, at *8 (E.D. Pa. July 7, 2010) (harassment between men and women is not automatically sex discrimination; courts must examine the totality of the circumstances); Paris v. Christiana Care Visiting Nurse Ass'n, 197 F. Supp. 2d 111, 117 (D. Del. 2002) (acknowledging that "gender stereotypes" or "comments about womanhood" can be gender-based, but finding no gender-based comments where none of the statements at issue referred to "antiquated ideas about what women can or cannot do, where women belong, or other perceived limitations on women's abilities, goals, or worth").

Most of the alleged race-based and gender-based comments about which Krieger complains do not exhibit an *anti*-African American or *anti*-female animus.  In fact, some are actually favorable toward African Americans or women, while others are simply neutral.  (See Response at p. 19 (alleging that Rowland told the group that he grew up in South Dakota where there were only white people and that he did not meet a black person until age 18); *id.* (alleging and that he took home economics in college because he loved women); *id*. at 20 (alleging that Rowland told a co-worker about "the smartest black man he ever met").)  Indeed, Krieger admits that Rowland never exposed her to the "N word," never called her or her female co-workers derogatory gender-related names, and never subjected her to racially or sexually offensive comments or jokes.  (Dep. 290:19-24, 260:8-264:12.)  Therefore, regardless of whether Krieger disliked working for Rowland, she has not met her burden of establishing that her experience was attributable to anti-African American or anti-female animus.

### 3. **Krieger's Mere Repetition Of Her Allegations Does Not Establish That Her Manager's Alleged Conduct Was Sufficiently Severe Or Pervasive**

Subtracting remarks that are not derogatory, little is left from which a reasonable juror could conclude that Krieger experienced an objectively hostile work environment. This is especially true given that Krieger had fewer than a dozen interactions during the approximately 18 months she reported to Rowland. In fact, many courts have found that far more frequent and egregious conduct does not give rise to a hostile work environment as a matter of law. See e.g., Koelsch v. Beltone Electronics Corp., 46 F.3d 705 (7th Cir. 1995) (holding that offensive remarks and two incidents of physical contact by supervisor, including grabbing of plaintiff's buttocks, did not rise to the level of actionable sexual harassment); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1077-80, 1084 (3d Cir. 1996) (finding no hostile work environment where coworkers referred to plaintiff and his black coworkers as "them people" and "poor people," the company's regional vice president referred to a black supervisor as "that one in there," and the plaintiff's supervisor aggravated animosity by stating that "the blacks are against the whites"); Saxton v. Am. Tel. & Tel. Co., 10 F.3d 526, 533-34 (7th Cir. 1993) (finding that supervisor's placing a hand on plaintiff's leg and knee, rubbing his hand along her upper thigh, kissing her, and jumping out of bushes and trying to grab her did not create a hostile work environment); Tucker v. Merck & Co., Inc., No. 03-5015, 2004 WL 1368823, at *15 (E.D. Pa. June 17, 2004) (granting summary judgment on plaintiff's claim when he could not "cite a single incident involving the utterance of a racial epithet, the use of a racist symbol, or *any* direct comment concerning race"); Baker v. Starwood Hotel & Resort Worldwide, Inc., 1999 WL 397405 (E.D. La. 1999) (finding no hostile work environment where supervisor commented that plaintiff was "sexy in her uniform," "attractive," "turned [the supervisor] on" and had a pretty smile"; attempted to kiss her on multiple occasions, touched her thigh, and grabbed her hand and

attempted to guide it to his crotch); Ulrich v. K-Mart Corp., 858 F. Supp. 1087 (D. Kan. 1994) (finding no hostile work environment where plaintiff was kissed, groped on the breasts, and touched on the buttocks). Because the alleged comments about which Krieger complains pale in comparison, Lilly is entitled to summary judgment on her hostile work environment claim.

       Moreover, Krieger cannot survive summary judgment on her hostile work environment claim through self-serving opinions and argument without any evidentiary basis. Krieger argues that Rowland was less than forthcoming with HR during investigations of internal complaints some of the plaintiffs made (Response p. 21) and that the HR investigation was somehow flawed because it did not result in Rowland being disciplined (id.). While Lilly denies Krieger's assertions of wronging and liability in this regard, the fact is that the investigation and Rowland's alleged conduct during it have no bearing on the question of whether Krieger was exposed to conduct that could create an objectively hostile work environment (which she was not). Moreover, that Krieger disagrees with the content or conclusion of Lilly's investigation is of no consequence. See Knabe v. Boury Corp., 114 F.3d 407, 413 (3d Cir. 1997) (fact that investigation did not result in a finding that harassment occurred or subjected the accused harasser to disciplinary action did not undermine legal adequacy of employer's response); Wickham v. Walls, No. 09-4690, 2010 WL 5166387, at *8 (3d Cir. Dec. 21, 2010) (remedial measures were adequate as a matter of law where employer, among other things, adequately addressed the substance of plaintiff's complaint even though it took several months to complete the investigation, noting that "the legal adequacy of remedial measures is not solely dependent upon their ultimate effect, but rather whether they were 'reasonably calculated' to end the harassment"); Geddis v. Univ. of Del., 40 F. App'x 650, 653 (3d Cir. 2002) (inadequacy of investigation does not result in finding of underlying investigation); Taylor v. JFC Staffing

Assocs., 690 F. Supp. 2d 357, 396 (M.D. Pa. 2009) ("[The employer] took steps to address the conduct complained of, this is all that is required of an employer to defeat liability for a . . . hostile work environment under Title VII.)

Krieger's encounters with Rowland were, as a matter of law, too few and too innocuous to rise to the level of an actionable hostile work environment, and Lilly is entitled to summary judgment on her race-based and sex-based harassment claims.

### D. Krieger Cannot Succeed On Her Breach Of Contract Claim

Krieger's breach of contract claim fails as a matter of law. New Jersey law does not provide a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employee handbook where the alleged discrimination would be in violation of the New Jersey Law Against Discrimination ("NJLAD"). Gimello v. Costco Wholesale Corp., No. A-1506-07T3, 2008 WL 5115884, at *3 (N.J. Super. App. Div. Dec. 8, 2008 (citing N.J.S.A. 10:5-1 to -49 and Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 309 (3d Cir. 2004)); see also Flizack v. Good News Home for Women, 787 A.2d 228, 235-36 (N.J. Super. App. Div. 2001) (general company credo related to anti-discrimination policy did not create an enforceable contract; statement that promotions were made without regard to various protected categories "did not contain the level of detail that one might reasonably expect in a binding contract). The Redbook language on which Krieger relies is precisely the sort of general anti-discrimination and anti-harassment language that the courts have held cannot be used to "double dip" under both the NJLAD and breach of contract theories. (Response 36-39.) Even if the Redbook were an enforceable contract in some respect (which Lilly disputes), Krieger fails to identify (as she must) any provision that is specific enough to support a Woolley claim beyond the anti-discrimination provisions (that do not count). Bell v. KA Indus. Servs., LLC, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (breach of contract plaintiff must identify some

12

provision or language in an employment policy guaranteeing the benefit that was allegedly denied). Thus, Lilly is entitled to summary judgment on Krieger's breach of contract claim.

### III.  CONCLUSION

Although Krieger loaded her Complaint with numerous claims, none stick. Her disability discrimination and failure to accommodate claims are admittedly irrelevant to her employment with Lilly and lack any merit. Her breach of contract claim finds no support in the law. Her discrimination and retaliation claims are based on her probation and termination, and she has admitted to the misconduct and poor performance that led Lilly to make these discipline and discharge decisions. Her hostile work environment claim finds no support in the too few (and too favorable) comments that she alleges Rowland made. In short, nothing happened to Krieger that gives rise to a legal claim. For the foregoing reasons and those set forth in Lilly's Opening Brief, Lilly respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in its favor as to all of Krieger's claims.

Dated:  April 15, 2010

Respectfully submitted,

/s/ Joseph C. Pettygrove

Ellen E. Boshkoff, admitted *pro hac vice*
Craig M. Borowski, admitted *pro hac vice*
Joseph C. Pettygrove, admitted *pro hac vice*
BAKER & DANIELS LLP
300 N. Meridian, Suite 2700
Indianapolis, IN 46204
Phone:  (317) 237-0300
Fax:  (317) 237-1000
ellen.boshkoff@bakerd.com
craig.borowski@bakerd.com
joseph.pettygrove@bakerd.com

Miriam Edelstein (Pa. Id. No. 204557)
REED SMITH LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
medelstein@reedsmith.com

Attorneys for Defendant Eli Lilly and Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true and correct copy of the foregoing was served on April 15, 2010, upon the following counsel of record by electronic delivery via the Court's CM/ECF system:

| | |
|---|---|
| Gregg L. Zeff | Dean R. Phillips & Deborah Simon |
| Law Office of Gregg L. Zeff | ELLIOT GREENLEAF |
| 100 Century Parkway #305 | Union Meeting Corporate Center |
| Mt. Laurel, N.J. 08054 | 925 Harvest Drive, Suite 300 |
| gzeff@glzefflaw.com | Blue Bell, PA  19422-1956 |
| | dhs@elliottgreenleaf.com |
| *Attorney for Plaintiffs* | drp@elliottgreenleaf.com |
| | |
| | *Attorneys for Defendant Timothy Rowland* |

/s/ Joseph C. Pettygrove

BDDB01 6604711v3